Good morning. May it please the court, my name is Jeffrey Wolf. I represent Patrice Canton. I'd like to reserve three minutes for rebuttal, if I may, Your Honor. That request will be granted. Thank you, Your Honor. May it please the court, this case arose out of a number of issues. One of the key issues in this case became whether or not KMART had actual and or constructive notice of a substance that was on one of the floors of the aisles of its store, in this case liquid soap, and whether or not that caused our client, Ms. Canton, to fall and suffer injuries as she did. And this case went up for summary judgment. The district court awarded summary judgment to the defendant, KMART, but in doing so, we believe that they erred as a matter of law, first by not considering a substantial amount of evidence as to constructive notice that KMART had, as well as actual notice. We also believe that in doing so, the district court abused its discretion in excluding certain when it failed to essentially apply a spoliation inference that it stated in an order granting in part and denying in part sanctions for spoliation, said that the appellant plaintiff was entitled to, with respect to the photographs. If I may, I'd like to go through and take these issues, which are actually spread about five issues in our appeal, but because they're so closely related, it might make more logical sense for me to work from constructive notice, actual notice, and so forth, and tying into the evidentiary concerns that we had. First off, there was certainly ample evidence to suggest that there was constructive notice on the part of KMART. There was witness testimony that stated, including the plaintiff's testimony herself, that stated that there was a lot of liquid not only on her person but in the bath. They had, it sounds like, a pretty sizable wad of paper towels to do it with. There was also a witness by the name of Jean Baptiste. She testified that there was a skid mark in the spill that was there, indicating that it had been there for quite some time. What did you deduce from the skid mark? Well, that it's been there long enough for someone to have walked through it, and there skid marks or tracks through a spill can indicate, very often indicate, or is evidence of, the duration that the spill was on the floor. Do you know that it wasn't a camping skid mark? Well, we don't know that. I don't believe that we know who actually made the skid mark. It's certainly safe to say that, you know, given the size of the spill and the amount that was on her person when she eventually got up, that one of the skid marks, or there may have been multiple skid marks, were not really clear. And a lot of this issue, and I'll go ahead and tie this in now, I'm sure we'll come back to it, relates to the fact that if we just had those photographs and we just had that video that may have been there, we might be able to deduce, you know, how this spill actually happened, the amount, who made the skid mark, and these sorts of things. The district court, as I said, indicated earlier, had actually indicated that Kmart, in its sanctions order, had negligently failed to maintain those photographs. I think they all, I still would argue, Your Honor, that would help you on your actual notice or constructive notice? Constructive notice. Constructive notice. Certainly if we had photographs, photographs that would essentially, doing one of the things that spoliation motion would do, put us back in the position where we could have been had we had them, it could have shown that there was a sizable spill there. And it would essentially support the other testimony from Ms. Jean-Baptiste that there was a skid mark in the testimony. The size of the spill, if it did happen, doesn't indicate notice. The size of the spill, even if it didn't happen, doesn't necessarily indicate notice. The size of the spill. You're correct, Your Honor. It doesn't, you know, the size of, no matter how big the spill, certainly a large spill could happen instantly and could be sitting there for only a matter of seconds, but the opposite is also true. And what we've learned is, and there is affidavits, I believe, in supporting testimony that said that Kmart, yeah, they had inspection procedures, but they weren't following them. And that, in fact, that their regular practice and procedure was not to follow all of their inspection procedures. So it's at least evidence that should have been considered. It's evidence that should have gone to the jury. While it's not definitive that the size of the spill means that Kmart had notice, the jury was entitled to hear that. They were also entitled to hear about the fact that Kmart had had six prior incidents of similar falls in the last, or in the previous two years leading up to this incident, but that never got to the jury. So these were all issues of constructive notice. Why did that not get to the jury? Well, because obviously the court decided that this, the district court awarded some of the judgments, so. All right, okay. They awarded some of the judgments. You were not, yeah, all right. You were not, you were precluded because you never got to the jury, period. Yes, sir, I'm sorry, yes. So on constructive notice, I just have one question. I don't know whether this is in the record. It's dial liquid soap. Is it 32 ounces? Is it larger than that? My understanding from going back and reading the plaintiff or appellant's testimony was that it was like a large gallon jug of things. I mean, it was apparently a lot. Because the court says it was three quarters full when it was found. That's why I asked. Or from our perspective, a quarter empty, perhaps. And a quarter empty of a gallon is quite a lot when we're talking about the aisle of a floor, or an aisle in a store. Very much. All right. Talk a little bit about the hearsay question on Roberts' statement. Yes. Mr. Roberts was, or excuse me, Ms. Roberts was a witness who was the first to respond. She came down the aisle. She heard, well, actually, she was already on the aisle where the plaintiff was at the time, but she had her back facing the opposite direction. And she heard the plaintiff exclaim, oh, God. And she turned and saw a plaintiff appellant lying on the floor, more or less covered in what turned out to be soap. And at about that time, almost instantaneously, Roberts says she heard someone, and I'll quote here, she heard someone say, someone did tell me something's on the floor, but I didn't go right away to see what it was. And that's found in our Joint Appendix 219 from Roberts' testimony, page 20. But that's what Roberts heard. And within seconds, I believe, a couple of Kmart employees appeared and they had badges designating them as Kmart employees. And so this statement was included in our opposition for summary judgment. And the plaintiff appellant has argued, and we argued today, that this was essentially an admission by a party opponent. And it doesn't really matter that we don't know exactly who said it, but it was said. And what did the district court say about that? Well, the district court cited to Huey, among others, the Home Depot case in which, it's a Pennsylvania case, actually, and the district court, in its decision, denying . . . I'm sorry, excuse me, granting summary judgment to . . . but in this case, it essentially said that, following Huey, that it's important to know who the employer is and whether or not, therefore, this person was acting within the scope. And in the Huey case, as I'm sure the court is aware, there was an issue as to whether or not what the plaintiff heard Home Depot employees say in an aisle or two over about a leak on the floor was admissible, whether or not it was admissible for the truth that there was a spill. Well, I mean, in this case, there's a slight distinction. I mean, here, it's an important one. We've asked the court and we asked the district court to consider that statement as evidence of notice, not so much that there was a spill. We already have evidence that there was a spill. We have a lot of evidence that there was a spill. What we were trying to establish is notice. And therefore, we directed the district court to . . . Is that different than trying to get the statement in for the truth of its content, that there was, in fact, a spill? I mean, I think that that distinction can be made, certainly. I mean, if we're trying to establish actual notice, which is key to a premises liability case, it's either got actual or constructive. If we're trying to establish actual notice, we're trying to establish that the Kmart employee, assuming we could also establish that, that the Kmart employee knew that the spill was on the floor and that they did nothing about it. Does that also help you as to the constructive notice claim? Or is it inadmissible hearsay on the constructive notice claim? I mean, certainly, I think you could argue that it would also work toward establishing constructive notice insofar as you're talking about whether or not Kmart employees were following the policies they should have been, were they patrolling, were they not, that sort of thing. I don't know if I answered your question, Your Honor. You did. Okay. But on that question, we directed the court's attention to the Ryder case, which is the age discrimination case that involved some statements made during a meeting one year prior to an executive getting fired. And those statements actually got admitted to prove that you may, the jury at least, could have decided that there was a discriminatory culture. But in that meeting, there's no question that everyone in the meeting is an employee. Here, there's no question here that there's some issue not just as to whether the person is an employee but their identity. And if you have no idea who they are, you're not sure that they're an employee, isn't that problematic in allowing that hearsay evidence in? Well, it seemed problematic in Ryder in that they still didn't know who, as you said, they didn't know who made the statements. And I guess your question gets to we still need to verify this person was an employee. But in this case, we still had immediately after that statement was made, you've got a couple of employees that have Kmart badges appear right after that statement is made. And the question also is, just as more of us, I guess when I look at this sort of a commonsensical question, who but a Kmart employee would say, oh, yeah, somebody told me about that and I haven't had a chance to go and take care of it yet? I mean, there's a reliability issue that I think, a concern for reliability that overcomes — I'm sorry, my time is up. You can finish. You can finish answering what you were saying. Well, I think that underlying the hearsay rule and all the exceptions that we've cited in our brief that we believe are applicable also, at the end of the day, it's really a concern about reliability. And if you have, as in this instance, as you did in the Pappas case, the snow shovel case that we cited, when somebody shows up right around the time that there's been a fall and there's a contemporaneous admission by someone, even an unidentified someone, in the Pappas case it was somebody apparently affiliated with the Condo Association, there is some reliability, inherent reliability that should be considered. All right. We'll have you back on rebuttal, Mr. Moore. Mr. Simonet? Good morning, Your Honor. Eugenio J. Gelsimone on behalf of Kmart. May it please the Court. Your Honors, the reason under which we find ourselves here, we've been here before, and I direct the Court's attention respectfully to David v. Pueblo and Saldana v. Kmart. Very similar cases, again, dealing with the issues of constructive knowledge and actual knowledge. The appellant here has made reference under the issue of this constructive, I'm sorry, constructive knowledge as it pertains to what is alleged was a skid mark. Your Honors, we will find in the materials, particularly at page 40 of Ms. Canton's deposition, that at a question as to this issue, she very clearly indicates, I did that. It was a skid mark from my foot when I slid. So I don't think there is any question as to where that skid mark comes from, who did it. The appellant herself admitted it was her own. On the issue of any other marks in this liquid, that's it. We don't have any evidence of any tracks, of any footprints, or anything else. That's all we have, and that's been identified by Ms. Canton. On the issue of what the pictures or the videos may have shown, we respectfully refer the court that this should have never even been raised on appeal because this matter was never actually a part of summary judgment. Reason being that the district court's order on that issue came after the summary judgment had been presented before the court, so it was never even being considered by the district court. Assuming we're to even consider that issue, Your Honors, we will point out that the fact that pictures may have not been properly kept, it is really speculation to go into what it is that the jury would have made out of them. All the jury could have seen from them, based on what we know that we have here, is a skid mark which Ms. Canton testified to she did herself. Beyond that, there's really nothing else that we could speculate as to what the pictures would have actually demonstrated. On the issue of the affidavits, these were provided from another case. It's also in the appendix. Lynette Harris has no bearing on this case, and these were employees which had actually filed a lawsuit against Kmart and were utilized in that other case, so it is our position that it really has no bearing on this case. On the issue of the other six incidents, this arises again in the appendix, and it comes from the answers to interrogatory by Kmart, which many of you are objected to. The other incidents, in addition to having been objected to in the response, were not the same ones as we have here regarding the liquid. It was three of them that were never determined what the cause was. One was the liquid. So you can't say it's a similar incident in the sense that it's a liquid, because it is not. Perhaps there may have been one which was a liquid, but it was never described as an actual soap or dial soap. The statement is here, say, Your Honors. The statement cannot be admitted under any of the prepositions which the appellant has moved forth. Well, why wouldn't it be a statement of a party opponent, an employee of Kmart? In this case, Your Honor, it is not, because as the district court correctly pointed out, that employee was never identified, and discussion arose as to the issue of the cases cited . . . But Ms. Roberts testified that it was a Kmart employee. She saw the badge, correct? She saw enough identifying features that she knew it was a Kmart employee. And wasn't there evidence in the record that all Kmart employees in the store were to respond to any incidents such as this? Sure. There is evidence in the record that all employees were supposed to respond . . . So, which part of it is here in admissible hearsay? Pardon? What part of Ms. Roberts' statement about what the Kmart employee said would be in admissible hearsay? Well, the problem we have with the statement that makes it inadmissible is that she was never really identified. We do have that statement. She was wearing a badge. That's it. She was wearing a badge. Does that mean that she was actually working that day as a Kmart employee? Was she on duty at the time? We don't know. That doesn't come from . . . Now, Mr. Wolf just said . . . It could be. Mr. Wolf just said that Ms. Roberts heard the statement and didn't see who made it, and two seconds later, two Kmart employees were there. Is that what happened? Did she see them? It's a little hard to tell from the brief, but . . . Ms. Roberts states that there was someone whom she, according to her in that deposition, she identifies as a Kmart employee on subsequent questioning because she was wearing a badge. And that's it. There is this discussion about these other two employees coming in later and that supposedly that's where this discussion or this conversation arises. But even if, taking your Honor's point, that all employees would be responsible, true. However, again, we run into a brick wall, or our plans do, to the extent that if the badge is all they're going to hold on to in order to sustain that it was a Kmart employee, it is insufficient because we don't know if that Kmart employee was actually working there that day. It's extremely speculative to the extent . . . Can they wear their badges when they're not working? They may if they're actually going to punch in. We don't have all of the information before us in terms of, again, to be able to make that determination. What time was this accident? This happened in the afternoon. I believe it was late in the afternoon. Late to mid-afternoon between 3 and 12 o'clock on a Sunday. She may have been going in. She may have been checking out. So again, it comes to a point where the court is being asked to speculate that this lady, whom we don't know the name, whom we don't know where is she working, and in fact, from all of the discovery that was performed, does never appear, was actually a Kmart employee. We do know for a fact from the record and from the deposition that Ms. Batiste was the only employee who was working that area where Ms. Canton slipped and fell. And that was her testimony. I was the only one working on that area. It was also her particular aisle. Soon before this accident happened, she hadn't noticed anything. But if we take this fact that Ms. Roberts said she heard the Kmart employee say what she said, okay, at the summary judgment stage, aren't we to take that fact in a fashion most favorable to the non-moving party, in this case, Canton? Absolutely, Your Honor. Okay. And isn't that the issue here is whether or not summary judgment should have been granted? I beg your pardon? I mean, the issue here is whether or not summary judgment should have been granted under the facts that the court knew of them at the time and that we have in front of us. Right. So as I said to you earlier, some of these facts that you're arguing may be facts that you could persuasively argue to a jury, but don't they raise inferences which we're entitled to take in favor of the non-moving party, in this case, Ms. Canton? A point may be made to that. The problem we have, Your Honor, is that, again, based on the case law cited actually by both parties, the Third Circuit case law has been very consistent on this issue. If you cannot identify the individual, summary judgment has to be granted. And this is the case on Home Depot, and actually we have two Westinghouse cases arising on the Third Circuit, one which is cited by the district court and the other by the appellant. And interestingly enough, in those instances, this issue arises. There is the particular Ryder v. Westinghouse case which appellant notes to. They're utilizing the case on behalf of their argument. The problem with that is that, again, the identification of the individual. There's this discussion about the they, but nobody knows who they really is. However, from a reading of the complete case, we'll note that the they is actually much better identified than if we compare it to merely a batch because in that Westinghouse case, the they came out of a meeting in which Westinghouse executives discussed the issue of the alleged discrimination and from subsequent documents which were obtained and discovered. So, again, if we take to use a particular term, the fatality of the circumstances, and in this case, and compare that to the cases which we have to give us guidance as to how this matter should be resolved, it would appear to us that the district court did the correct thing in having ruled the way they did because, again, there is a partial identification to the extent that this person, I don't know her name, I don't know who she is, I don't know if she really works for Kmart. I'm assuming she works for Kmart because she's wearing a badge, a Kmart badge. I'm assuming she was working at that time at Kmart because she's wearing that badge. Again, these are conjectures and assumptions which, even if we do take the standard utilized for summary judgment in looking at these arguments favoring the plaintiff, in this case the applant, it is not sufficient to overcome the summary judgment burden, Your Honors. And in that regard, that is why it would not be an admission by party opponent because, again, it is this issue of identification. We can go back and forth as to what is identification and what is proper and what is improper identification, but the fact of the matter is, for purposes of what we have here, did she identify from the evidence before the court, can you identify that individual as a Kmart employee? No. I'm intrigued by this whole, we can't find this employee. Everybody knows the day this happened, right? There are only a certain number of employees at Kmart. She's described as a slim, dark-skinned, let me see, but I didn't go right away to see what it was. I presume there was sufficient discovery. Well, let me ask this. I presume you received some sort of discovery request for a roster or whatever of employees. We did, Your Honor. And despite that, there was no identification of who this person was, is that right? That's absolutely right, Your Honor, and this goes to the heart of the issue. Again, extensive discovery was done in this case, particularly in written discovery and in factual depositions, and as part of the production of documents that was requested from Kmart, a list called on-call list was provided. The on-call provides the name of the employee, their batch number, and the area to which they are assigned to. All that was produced, and in the incident report, which is also part of the materials, we'll see from it that the only witnesses that were actually present or actually had some kind of knowledge regarding this incident, their names were taken down, and this is, again, Ms. Batiste, Ms. Roberts, and when this whole investigation is performed, these are the names that actually come up. If there were additional employees, these were produced in the on-call list. Was there an employee in the store who fit the physical description given? From my recollection of the materials before us, there is none other than that statement that is given by Ms. Roberts on her deposition. So, again, the question before us is on that issue, the appellant sites to Papas versus Middle East and the Median. We think it's, first of all, it's from the Second Circuit, and secondly, it's distinguishable because in that particular case, this individual who comes in with the bucket and the shovel to clear up the ice, obviously in the middle of the night, he's coming in to clean this up because he's been called by the condominium. So it is evident that he's an employee or has some kind of employee association with the condominium for purposes of clearing the snow which caused that accident. So, again, it goes back to the matter that it is an issue of notice, Your Honors, and based on all of the factual statements, all of the supporting documentation which was produced to the district court at the time of summary judgment, it was sufficient to establish, in fact, that there was no notice for Kuhlman. And this is, again, based on the deposition testimony and on the documents which were produced. And as I indicated earlier, the issue of constructive knowledge has no weight for purposes of overcoming summary judgment burden. Thank you. Thank you. Thank you. Mr. Wolf? Your Honor, again, Jeffrey Wolf from Fort Patrice, Canton. Let me ask you a question. I got confused because you had said when you were at the podium earlier that Ms. Roberts heard the statement from the other aisle, and then within two seconds there were two employees who came. Did she actually see one of the alleged employees make that statement? Did she see them make that statement when they made the statement? I'm not sure that that's clear from the record. And I would submit, just based on the exchange that we just had on rebuttal, that it's highly suggestive of the fact that there are a lot of factual issues that need to be flushed out in front of the jury rather than by the district court. I think certainly the badge itself and the identification of the badge is sufficient to create an issue as to actual knowledge. If she heard the statement and then two seconds later saw the two employees with badges, isn't that slightly different than actually seeing an employee with a badge make the statement? Oh, certainly. I mean, if you have the person standing in front of you and you see them make that statement, yes, there's certainly a distinction there. However, when you consider the substance of the statement and that concept. Was the employee standing in front of her? Was the employee standing in front of her? I don't believe that. Well, in your responses to the defendant's statements of undisputed facts, I'm reading from your response to Defendant Statement 14. It ascribes to Ms. Roberts that she overheard a slim, dark-skinned Kmart employee say, which one can infer whatever one wants. But the question I had is where's the mention of the badge? You said that Ms. Roberts saw the employee with a badge. And I'm looking at these responses and it doesn't mention it. That doesn't mean it's not there. It's a large record. I believe that's from the deposition testimony, Your Honor. I'm trying to look for the site now in my notes. Your Honor, I can't find it in my notes here. But I believe that it's in the deposition testimony of Ms. Roberts. But the court was inquiring about the whereabouts of this employee. And looking back at the record of this case, you sort of have to wonder, again, in terms of credibility issues. I mean, we have video that should have been preserved and cached. But Kmart says, well, we don't know if we had it in that section or not. And the court was satisfied with that apparently. And we have missing photographs that could have shown the location and the nature of the spill. We have a lot of credibility and fact issues that should have gone to the jury. And, yes, it's the court that overturned the grant of some of this. All right. OK. We thank counsel for their arguments. And we will take the matter under advisement. Thank you very much.